IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

League of Women Voters of Ohio, *et al.*,                    Case No. 3:05CV7309

        Plaintiffs

    v.                                                                              ORDER

J. Kenneth Blackwell, Secretary of State of Ohio,
      and Bob Taft, Governor of Ohio,

        Defendants

        Plaintiffs League of Women Voters, *et al.* (LWV) bring this action against defendants J. Kenneth Blackwell, Secretary of State of Ohio, and Bob Taft, Governor of Ohio, under the Help America Vote Act (HAVA), 42 U.S.C. § 15301; 42 U.S.C. § 1983; and the Fourteenth Amendment of the Constitution of the United States. LWV alleges that Secretary Blackwell and Governor Taft administer a voting process which systematically impairs Ohio citizens' voting rights. Jurisdiction exists under 28 U.S.C. § 1331.

        Pending is defendants' motion to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(1), (6), and (7), or in the alternative to transfer venue pursuant to Fed. R. Civ. P. 12(b)(3). For the following reasons, those motions will be granted in part and denied in part.

**Background**

        The state of Ohio uses a two-tiered system to administer its elections. At the state level, the Secretary of State, Blackwell, serves as the chief elections officer and the Governor, Taft, is the chief executive officer of the state. At the county level, county boards of elections (BOEs)

both implement statewide policy within their counties, and exercise substantial discretion concerning specific details of the election process.

Plaintiffs seek prospective injunctive relief to prevent a repeat of what they claim have been systemic breakdowns of the voting process in recent, and even not so recent, elections in Ohio. Specifically, they allege that in 2004 BOEs around the state: 1) failed to provide requested absentee ballots; 2) refused to count legitimate provisional ballots; 3) denied disabled voters an opportunity to vote; 4) disenfranchised voters by failing properly to maintain registration rolls; 5) misdirected voters to wrong precincts, where they could only vote provisionally; 6) improperly allocated voting machines, resulting in substantial delays at polling places and causing eligible voters to leave without voting; 7) improperly purged voters from registration rolls; 8) denied voters the opportunity to cast secret ballots; 9) improperly barred voters who wore clothing supporting candidates; and 10) failed to provide functional voting machines.[1] All these problems, LWV argues, foreseeable resulted from Ohio's two-tiered election system and Secretary Blackwell's and Governor Taft's actions and failures to act.

LWV contends, moreover, that the problems of the 2004 election are not new to Ohio's election system. They point to breakdowns in Ohio elections dating to at least the early 1970s, and thus references a 1973 General Accounting Office report noting significant problems in the administration of elections in Ohio.

Consequently, LWV believes the problems with "Ohio's voting system are pervasive, severe, chronic, and persistent - and will continue absent [] declaratory and injunctive relief."

---

[1]

Plaintiffs allege, at a minimum, these problems occurred in five of Ohio's eighty-eight counties: Cuyahoga, Franklin, Knox, Lucas, and Medina.

**Discussion**

LWV has brought three counts against the defendants under 42 U.S.C. § 1983. First, they allege that Secretary Blackwell and Governor Taft, as officers of the state, have maintained a voting system without sufficiently uniform standards and processes to ensure equal access to full exercise of the franchise. An ability or inability to vote, plaintiffs contend, depends solely and unconstitutionally on where electors happen to live. LWV claims this system violates plaintiffs' equal protection rights under the Fourteenth Amendment of the Constitution.

Plaintiffs' second count alleges substantive due process violations. LWV recites several impediments confronting Ohioans seeking to vote in November, 2004. In addition, plaintiffs' third count asserts that Blackwell and Taft violated Ohioans' procedural due process rights by administering an election system that takes significant action and makes meaningful decisions without providing citizens with either notice or the opportunity to challenge those actions or decisions. Plaintiffs claim these due process violations foreseeably resulted from defendants' actions and inactions at the state level.

Finally, LWV claims that defendants implemented a statewide voter registration system that violates the Help America Vote Act (HAVA). 42 U.S.C. § 15483.

In their motion to dismiss, defendants argue that: 1) LWV has not stated claims on which relief may granted; 2) two organizational plaintiffs lack standing; 3) plaintiffs have not joined necessary parties; and 4) the doctrine of claim preclusion bars plaintiffs' causes of action. In the alternative, defendants request a transfer of venue to the Southern District of Ohio.

**I. Plaintiffs State Claims On Which Relief May be Granted.**

Prior to filing an answer, a defendant may file a motion to dismiss for failure to state a claim on which relief may be granted. Fed. R. Civ. P. 12(b)(6). If the plaintiffs could not prevail "under any set of facts that could be proved consistent with the allegations," then the claim must be dismissed. *Swierkiewicz v. Sorema*, 534 U.S. 506, 514 (2002).

The Federal Rules do not require plaintiffs to set out the facts underlying their claims in detail. Rather, they need only provide "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Particularly in civil rights matters, a court may not impose any heightened pleading requirements. *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coord. Unit*, 507 U.S. 163, 168-69 (1993). Further, a court must construe the complaint in a light most favorable to plaintiffs and accept all the factual allegations and permissible inference from the allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### A. Equal Protection

Put simply, LWV contends that defendants' election system provides different voting rights to different citizens based solely on where those citizens happen to reside and vote. Some citizens get short lines, properly functioning voting machines, well trained and informed poll workers, accurate registration information, and the opportunity to cast unencumbered absentee or proper provisional ballots. Other citizens, due to the vagaries of residence and registration, encounter long lines, defective voting machines, ill-trained and uninformed poll workers, inaccurate registration information, and absentee or provisional ballots that are ultimately deemed invalid.

If LWV's allegations are well founded, defendants may be depriving citizens of the franchise depending on where they live in violation of the equal protection clause. *see U.S. v. Mosley*, 238 U.S. 383, 386 (1915) (holding a state may not deprive citizens of their vote based on where they live).

Just as a state may not directly condition the franchise on one's place of residence, one's place of residence cannot cause his or her vote to be cheapened or devalued. *see Reynolds v. Sims*, 377 U.S. 533, 555 (1964). (holding that Alabama violated citizens' due process rights by apportioning legislative districts to minimize the electoral strength of a class of voters).

Equal protection is likewise violated where the state dilutes the votes of some voters by imposing barriers to the ability or opportunity to vote. *Ury v. Santee*, 303 F. Supp. 119 (N.D. Ill. 1969) (defendants' failure to provide adequate voting facilities that resulted in long lines and failure to provide sufficient number of trained poll workers impaired citizens' rights to vote and violated equal protection clause).

Inaction that diminishes the right to vote equally may be as actionable as direct and overt acts treating the franchise unequally. A state having power to ensure uniform treatment of voters cannot adopt policies leading to disparate treatment of those voters and thereafter plead "no control" as a defense. *Bush v. Gore*, 531 U.S. 98, 109 (2004) (holding that Florida Supreme Court's statewide recount order violated equal protection clause because the Court had the power to assure uniformity and did not exercise that power to guarantee equal treatment and fundamental fairness). A state's failure to exercise such power, where such inaction foreseeably impairs the fair and equal exercise of the franchise, gives rise to an equal protection claim. *Id.*

Secretary Blackwell and Governor Taft respond that if voters had any specific problems on November 2, 2004, they should seek to redress and resolve those problems with the local BOEs.

This contention misconstrues the complaint. A possible cause of action against the BOEs would not address and does not bar a claim that, on a state-wide basis and under the supervision of state officials, Ohio's voting system breeds non-uniformity that defendants could and should correct.

Citing "arbitrary and irrational differences in rules, processes, and burdens depending solely on where the voter happens to reside," LWV argues that Blackwell and Taft "have knowingly allowed the voting process in the 88 counties in Ohio to devolve into an inconsistent and ultimately arbitrary crazy-quilt of actual laws, erroneous 'interpretations' of laws, and (often unannounced) 'local rules.'" If true, these facts give rise to a cause of action. Thus, defendants' motion to dismiss plaintiffs' equal protection claim will be denied.[2]

## B. Due Process

Plaintiffs seek to hold Secretary Blackwell and Governor Taft directly liable for both substantive and procedural due process violations stemming from the barriers LWV alleges Ohioans faced when trying to vote and for the lack of notice of, or opportunity to challenge, administrative decisions affecting voting.

### (i). Substantive Due Process

---

[2]

In addition, defendants also argue that LWV's claim fails because they do not allege intentional discrimination. That position misstates the case law. *Bush*, 531 U.S. 98 (making no finding of intentional discrimination) *Reynolds*, 377 U.S. 533 (same); *Ury*, 303 F. Supp. 119 (same).

There is no question that LWV has alleged actionable constitutional violations. What remains is whether Secretary Blackwell and Governor Taft are legally responsible for those violations.

Plaintiffs articulate, in some detail, the myriad of burdens they claim Ohioans faced in the 2004 election. In each instance, the conduct of local officials was the immediate cause of the alleged constitutional harm. Defendants argue, however, that they are not liable for any such injuries because respondeat superior does not apply in § 1983 actions. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694-95 (1978); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Though not potentially liable on a respondeat superior basis, Secretary Blackwell and Governor Taft may be legally accountable on other grounds.  State officers may be answerable for constitutional violations where state employees have not been trained adequately and that lack of training has caused constitutional wrongs. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).[3] Because § 1983 liability can only attach where the state's policies are the "moving force [behind] the constitutional violation," *Monell*, 436 U.S. at 694, plaintiffs must show: 1) that "the failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact," and 2) that the "deficiency in a [state's] training program [is] closely related to the ultimate injury." *Harris*, 489 U.S. at 388, 391.

---

[3]

*Harris* dealt with the actions of police officers in protecting the physical well being of those in custody. Courts, however, have applied *Harris's* "failure to train" logic in other circumstances as well. *Collins v. City of Harker Heights*, 503 U.S. 115 (1992) (applying failure to train theory to city sanitation workers); *Carter v. City of Philadelphia*, 181 F.3d 339 (3rd Cir.1999) (applying failure to train theory to police tactics in recruiting "perjurious witnesses"); *Gonzalez v. Ysleta Indep. Sch. Dist.*, 996 F.2d 745 (5th Cir.1993) (applying failure to train theory to school board actions).

7

In this case, LWV have plead sufficient facts to support a *Harris* claim. First, paragraph 191 of the complaint explicitly alleges that Secretary Blackwell and Governor Taft acted with "reckless and deliberate indifference and/or willful blindness to the constitutional rights of voters in Ohio."

In addition, plaintiffs offer more than just that conclusory statement; they assert specific facts. A failure to train amounts to "deliberate indifference" where state actors should have known, either because of a history of due process violations or because such likelihood was obvious, that due process violations were likely to result absent better training. *Id.* at 390, 390 n.4. Here, LWV details the history of election problems in Ohio that should have put defendants on notice of the need for better training. Moreover, plaintiffs allege that the problems of the 2004 election were obvious and avoidable in advance of election day. At this point, this Court simply determines whether plaintiffs have alleged deliberate indifference on the defendants' part to potential due process violations.

Second, plaintiffs contend that the purported failures at the state level have a sufficient nexus with polling place problems to support a *Harris* claim. The threshold issue is whether "the deficiency in training actually caused" the constitutional wrongs. *Id.* at 391. Courts distinguish between inadequate training programs resulting in constitutional wrongs, for which states may be liable, and situations in which more training for a particular individual might have prevented a constitutional violation, for which states are not liable. *Id.*

Here, LWV claims election problems stem from a statewide failure to ensure adequately trained poll workers, not just from random or localized deficiencies in training. Plaintiffs allege that problems with provisional balloting, voting machines, registration, and disabled voters

occurred on a broad basis, and thus, have plead sufficient facts and defendants motion with respect to this claim will be denied.

### (ii). Procedural Due Process

Plaintiffs League of Women Voters of Ohio (League-Ohio), League of Women Voters of Toledo (League-Toledo), Stenson, Jackson, Thomas, White and Barberio also allege that Secretary Blackwell and Governor Taft deprived them of their voting rights without due process of law.

Plaintiffs' procedural due process claim is similar to their substantive due process claim. They contend that local officials removed the names of the individual plaintiffs, and others, from the voter registration roles and did not provide them with either notice or opportunity to challenge the decision. That conduct, if true, would be actionable under § 1983. *see Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004). The dispositive issue remains whether defendants are legally responsible for the local officials' conduct.

Secretary Blackwell and Governor Taft may be liable under a failure to train theory here as well. Plaintiffs must show: 1) that defendants' failure to train amounted to deliberate indifference to Ohioans procedural due process rights; and 2) that the deficiency in the training program is closely related to the ultimate injury. *Harris*, 489 U.S. at 388, 391.

First, plaintiffs highlight a history of voter registration problems that would have put defendants on notice of the need for further training of local officials on these problems. In addition, plaintiffs identify events, including specific directives from Secretary Blackwell himself, that suggest defendants knew of the registration problems and may have even

9

exacerbated them.[4] Thus, defendants' failure to train may constitute deliberate indifference to plaintiffs' procedural due process rights.

Second, plaintiffs allege facts suggesting the procedural due process violations resulted from inadequacies in  training on a state-wide basis. To be actionable, the due process injury must result from a systemic failure to train, not from the actions of a particular individual who might have benefitted from more training. *Id.* at 391. In this case, plaintiffs allege systemic, rather than localized, problems. Thus, defendants' motion to dismiss plaintiffs' procedural due process claim will also be denied.[5]

---

[4]

Plaintiffs allege Secretary Blackwell issued specific directives concerning voter registration, notice, and opportunities to challenge registration decisions.

[5]

Plaintiffs also allege other theories of liability. Under Ohio election law, defendants have both powers and responsibilities to control the conduct of the BOEs:

> The secretary of state shall ... issue instructions by directives and advisories to members of the boards as to the proper methods of conducting elections; ... [p]repare rules and instructions for the conduct of elections; ... [c]ompel the observance by election officers in the several counties of the requirement of the elections laws; ... [p]rescribe a general program to remove ineligible voters from official registration lists by reason of change of residence, which shall be uniform [and] nondiscriminatory; ... [p]rescribe a general program for registering voters or updating voter registration information, such as name and residence changes, at designated agencies, the offices of deputy registrars of motor vehicles, public high schools and vocational schools, public libraries, and the offices of county treasurers, and prescribe a program of distribution of voter registration forms through those agencies, the offices of the registrar and deputy registrars of motor vehicles, public high schools and vocational schools, public libraries, and the offices of county treasurers...

Ohio R.C. §§ 3501.05 (B), (C), (F), (M), (Q), (R)).

On their face, plaintiffs assert these provisions make the Secretary of State responsible for the general supervision of local officials are therefore directly liable. *see Papasan, supra* at 281, n. 14. On at least one occasion, however, the Ohio Supreme Court has stated that a provision of this section

## C. Help America Vote Act

Plaintiffs allege that Ohio's computerized statewide voter database violates the Help America Vote Act. 42 U.S.C. § 15483, *et seq.* (HAVA). Specifically, LWV claims that Ohio's database is not uniform and permits counties to remove eligible voters from the statewide voter registration database without notice to the voters. Defendants counter that even if these claims are true, Ohio is under no obligation to comply with HAVA until January, 2006.

The Help America Vote Act requires each state create a statewide voter registration database. 42 U.S.C. § 15483(a). That database must meet certain minimum standards. *Id.*

Even if LWV's claims are true, HAVA does not yet apply to Ohio's voter registration database, though it soon will. As plaintiffs acknowledge in their complaint, Ohio requested an extension of the deadline for compliance with the statute. 42 U.S.C. § 15483(d)(1)(B). If a state makes such request, HAVA grants a mandatory extension for complying with its requirements until January, 2006. *Id.*

---

has not "imposed a specific duty." *State, ex rel. Hodges, et al. v. Taft*, 64 Ohio St. 3d 1, 6-7 (1992) (emphasis in original); *but see State ex rel. Squire v. Taft*, 69 Ohio St.3d 365, 368 (1994) (noting secretary's § 3501.05 duty subject to mandamus for abuse of discretion).

In addition, LWV alleges that Secretary Blackwell issued numerous detailed directives to state and county election officials on nearly every aspect of the election process.  They claim he exercised administrative oversight over BOEs, including removal of BOE members in at least six counties.

Plaintiffs thus allege that the Secretary's exercise of state-wide oversight, coupled with defendants' alleged knowledge of past voting problems, could form another basis for direct liability. *Penick v. Columbus Bd. of Ed.*, 663 F.2d 24, 27 (6th Cir. 1981). "[A] claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Leatherman v. Tarrant Cty. Narcotics Intelligence and Coord. Unit*,  507 U.S. at 165 (quoting *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988)).

LWV argues the extension is irrelevant because Ohio has already introduced its database. They claim that, once implemented, Ohio's database must comply with § 15483(a)'s requirements.

That argument is inconsistent with the statute. HAVA provides that once a state requests an extension, the state "shall be required to comply with the requirement of subsection (a) on and after" January 1, 2006. 42 U.S.C. §§ 15483(a), (b)(1)(A), (b)(1)(B). Even if Ohio has already implemented its database, it need not comply with HAVA until after January 1, 2006. Consequently, defendants' motion to dismiss this claim shall be granted.

## II. Secretary Blackwell and Governor Taft Are Proper Parties.

Secretary Blackwell and Governor Taft contend that they are not the proper defendants for any of plaintiffs' causes of action. Secretary Blackwell argues that Ohio election law vests control and responsibility at the local level, so that he is not the proper target for injunctive relief. Governor Taft makes a similar argument, stating that he has little connection to Ohio election law because he is "merely the supreme executive power of the State of Ohio." Both arguments are misplaced.

The Sixth Circuit has stated in an analogous case:

> [Defendants] also argue that only the officer with immediate control over the challenged act or omission is amenable to § 1983. We find this claim ridiculous. Such a rule would allow a state agency to avoid, or defer, liability merely by transferring the defendant in a particular case, or by changing the scope of the defendant official's authority. The directors of a state agency, no matter how far removed from the actions of agency employees, are proper parties to a suit for an injunction under § 1983.

12

*Futernick v. Sumpter Tp.,* 78 F.3d 1051, 1055 (6th Cir.1996) *overruled on other grounds*; *see also Common Cause v. Jones*, 213 F. Supp. 2d 1106, 1108 (C.D.Cal. 2001).[6]

Secretary Blackwell is the chief elections officer of the state of Ohio. R.C. § 35.01.04.

Thus he is a proper defendant here.

Though the Governor's role and responsibilities are less clear, plaintiffs can name and

keep Governor Taft in this action. The Supreme Court has outlined standards to determine which

government officials are proper defendants in a suit for prospective injunctive relief:

> In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party.
> It has not, however, been held that it was necessary that such duty should be declared in the same act which is to be enforced. In some cases, it is true, the duty of enforcement has been so imposed ... but that may possibly make the duty more clear; if it otherwise exist it is equally efficacious. The fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact, and whether it arises out of the general law, or is specially created by the act itself, is not material so long as it exists.

*Ex parte Young,* 209 U.S. 123, 157 (1908).

---

[6]

As stated in *Common Cause*:

> Plaintiff's choice of the secretary of state as a defendant is appropriate. Plaintiff claims that the denial of the right to vote arises from the collective choices of voting system by various counties. No choice by any single county is the source of the problem. Hence the only way to address the issue is to change the provision which allows counties to choose voting systems of widely disparate quality. The Secretary of State [sic] is the individual with the authority to make this change."

213 F. Supp. 2d at 1108.

The governor, as the chief executive of the state, has sufficient connection to election law to be a proper defendant in a suit for prospective injunctive relief regarding election procedures. *Lawson v. Shelby Cty.*, 211 F.3d 331, 335 (6th Cir. 2000) (governor had sufficient connection to Tennessee election law to be proper party); *Trinsey v. Com. of Pa., Dept. of State, Bd. of Elections*, 766 F. Supp. 1338 (E.D.Pa. 1991) (same); *see also Ward v. Utah*, 393 F.3d 1239 (10th Cir. 2005) (in general, governor was proper defendant in suit for prospective injunctive relief concerning allegedly unconstitutional state policy). Thus Governor Taft is also a proper defendant here.

## IV. Plaintiffs Have Standing.

Secretary Blackwell and Governor Taft also argue that plaintiffs League-Ohio and League-Toledo lack standing.

To have standing, a plaintiff must show: 1) an injury in fact that is concrete and particularized, actual and imminent, not conjectural or hypothetical; 2) the injury is traceable to the challenged action of the defendants; and 3) it is likely that the injury will be redressed by a favorable decision. *Cleveland Branch, N.A.A.C.P. v. City of Parma*, 263 F.3d 513, 523-24 (6th Cir. 2001) (citations omitted). To sue on behalf of its members, an organization must also show its members "would otherwise have standing to sue in their own right, the interests are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Id.* at 524. Defendants contend that none of the plaintiffs' allegations are linked to their conduct and that League-Ohio and League-Toledo do not identify any of their individual members with standing.

14

Defendants' first argument is essentially no different than their Rule 12(b)(6) argument discussed above. Put simply, plaintiffs' injuries are traceable to defendants' alleged equal protection and due process violations. See p. 4-11, *supra*.

Defendants' other argument, concerning the members of League-Toledo and League-Ohio, is also not compelling. First, Secretary Blackwell and Governor Taft acknowledge that members of League-Toledo would have standing to challenge harms suffered in that county. Thus League-Toledo has standing to at least that extent.

With respect to League-Ohio, defendants contend that League-Ohio has failed to identify individual members who would have standing in their own right. League-Ohio's allegations state that its "members also have been specifically aggrieved by Defendants' actions, which have infringed their fundamental right to vote and to equal protection." Secretary Blackwell and Governor Taft argue that League-Ohio must specify its members' counties of residence, but they offer no support for the proposition. I am aware of no authority to impose that additional requirement and thus decline to do so.

### V. Plaintiffs Have Joined all Necessary Parties.

Secretary Blackwell and Governor Taft also argue that plaintiffs have failed to join all necessary parties (the local BOEs) to this action. Defendants assert that if the plaintiffs refuse to join the BOEs as defendants, this action must be dismissed pursuant to Fed. R. Civ. P. 12(b)(7).

Rule 19(a)(1) of the Federal Rules of Civil Procedure requires that a person be joined as a party if that joinder will not deprive the court of jurisdiction and if in that person's absence complete relief cannot be granted. Fed. R. Civ. P. 19(a)(1). Here, joinder of the local BOEs will not deprive this Court of jurisdiction. Plaintiffs, however, seek a state-level remedy for alleged

15

state-wide constitutional wrongs. The presence or absence of the local BOEs has no bearing on whether complete relief can be granted. Thus the BOEs are not necessary parties and plaintiffs need not join them.

### VI. Claim Preclusion Does Not Bar Plaintiffs' Causes of Action.

Secretary Blackwell and Governor Taft also argue that plaintiffs' causes of action are claim precluded. Claim preclusion arises where: 1) the prior decision was a final decision on the merits; 2) the present action is between the same parties or their privies as those to the prior action; 3) the claim in a present action should have been litigated in the prior action; and 4) an identity exists between the prior and present actions. *Mitchell v. Chapman,* 343 F.3d 811, 819 (6th Cir. 2003).

Under those criteria, the only relevant case is *League of Women Voters, et al. v. Blackwell*, 04-7622. That case, however, dealt only with Secretary Blackwell's specific actions leading up to and during the 2004 election. A claim should have been litigated in a prior action only if it arises from the same nucleus of operative facts as its predecessor. *Forry, Inc. v. Neundorfer, Inc*., 837 F.2d 259, 265 (6th Cir. 1988). The 2004 *League of Women Voters* case did not arise out of the alleged systemic problems with Ohio's election process. Thus, the earlier action does not prevent plaintiffs from bringing this case.

### VII. This Court is a Proper Forum.

Finally, defendants also request this case be transferred to the Southern District of Ohio pursuant to 28 U.S.C. 1404(a); Fed. R. Civ. P. 12(b)(3). They contend that venue is improper here and that the Southern District of Ohio is a more convenient forum.

Venue is proper here. Many of the events giving rise to this suit occurred in Lucas County. Plaintiffs could properly file their claims here. 28 U.S.C. § 1391(b)(2).

Second, while the Southern District of Ohio may be more convenient for the defendants and some of their witnesses, most of the individual plaintiffs and most of the members of the organizational plaintiffs reside in the Northern District of Ohio. It is, therefore, not clear that the Southern District of Ohio actually is a more convenient forum. Transfer generally is inappropriate unless the balance of interests weighs strongly in favor of the defendant's request. *LaCroix v. Am. Horse Show Assoc.*, 853 F. Supp. 992, 1000 (N.D. Ohio 1993). Further, plaintiffs are entitled to deference to their lawful choice of forum. *Eberline v. Ajilon LLC*, 349 F. Supp. 2d 1052, 1054 (N.D. Ohio 2004). Defendants have offered no reason to disturb that deference. Thus their motion to transfer this action to the Southern District of Ohio will be denied.

**Conclusion**

For the foregoing reasons, it is therefore,

ORDERED that:

1. Defendants' motion to dismiss count four of plaintiffs' complaint (the HAVA claim) be, and the same hereby is, granted.

2. Defendants' motion to dismiss all other counts in plaintiffs' complaint be, and the same hereby is, denied.

3. Defendant's motion to transfer this case to the Southern District of Ohio be, and the same hereby is, denied.

So ordered.

/s/James G. Carr
James G. Carr
Chief Judge