UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

--------------------------------------------------

League of Women Voters of Ohio, et al.,    )
                            Plaintiffs,     )
                                            )       Case No. 3:05-CV-7309
            and                             )
                                            )       Hon. James G. Carr
Jeanne White,                               )
                    Plaintiff-Intervenor    )
                                            )
                v.                          )
                                            )
Jennifer Brunner, Secretary of State of Ohio )
and Ted Strickland, Governor of Ohio,       )
                                            )
                        Defendants          )
--------------------------------------------------

## ORDER ENFORCING SETTLEMENT AGREEMENT

On July 28, 2005, Plaintiffs League of Women Voters of Ohio, League of Women Voters

of Toledo-Lucas County, and several individuals commenced this action pursuant to 42 U.S.C.

§ 1983 alleging that the administration and conduct of elections and voting in Ohio violates

rights to Equal Protection and Substantive and Procedural Due Process under the 14th

Amendment to the U.S. Constitution ("Constitutional Claims"). Plaintiffs' Constitutional Claims

concern, in part, the voter registration databases used in Ohio ("Database Claims"). Plaintiffs

further separately alleged a violation of the Help America Vote Act ("HAVA") due to the

alleged lack of a HAVA-compliant statewide voter registration database ("HAVA Claims").

Plaintiffs sought injunctive and declaratory relief against the Defendants in their official

capacities as, respectively, the Secretary of State and Governor of Ohio. Defendants denied

Plaintiffs' allegations. On November 7, 2005, the District Court granted Plaintiff-Intervenor

Jeanne White's motion to intervene to bring the same Constitutional and HAVA Claims, and

1

further alleging in support of these claims alleged problems relating to voting machines and other voting technology. (All references hereafter to Plaintiffs includes Plaintiff-Intervenor White.)

The Court previously dismissed Plaintiffs' HAVA Claims. The Sixth Circuit Court of Appeals subsequently dismissed the Procedural Due Process claims. The District Court denied Defendants' motions to dismiss Plaintiffs' Equal Protection and Substantive Due Process claims and the Sixth Circuit affirmed that denial.

Plaintiffs and Defendants (the "Parties") have entered into a Settlement Agreement resolving the Constitutional Claims other than the Database Claims (the "Settled Claims"). A copy of the Settlement Agreement is annexed as Exhibit A to this Order.

Pursuant to the Settlement Agreement, the Parties agree to entry of this Order and agree that it may be entered without the Court making Findings of Fact and Conclusions of Law.

IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.    This Court has jurisdiction over the Parties and causes of action in this consent decree, provided however that, to the extent that the Database Claims are litigated, the Defendants reserve the right to contest jurisdiction with respect to those claims and the Plaintiffs reserve the right to oppose any jurisdictional arguments raised by Defendants.

2.    This Order pertains solely to claims pending in *League of Women Voters of Ohio, et al. v. Brunner, et al.*, 3:05-CV-7309 (N.D. Ohio) (the "Litigation") and to the enforcement of the Settlement Agreement. Other than as set forth below with respect to the Litigation and the Settlement Agreement, the Plaintiffs waive their right to bring any claims that they could have brought against these Defendants in this case that have arisen before the execution of this agreement except as has been specifically preserved in the settlement agreement. The

Defendants, however, do not waive any defense they did or can raise in this Court against any surviving claim including lack of subject matter jurisdiction, improper venue, or lack of standing.

3.    This Court shall have continuing jurisdiction to enforce this Order and the Settlement Agreement.  Except with respect to the Database Claims to the extent that they are recommenced as set forth below, this Court's jurisdiction over this case, however, ends on January 11, 2015 at 12:01 a.m.

4.    Except with respect to the Database Claims, the Settlement Agreement resolves the Constitutional Claims made by Plaintiffs in the Litigation.  Nothing in this Order or in the Settlement Agreement shall be deemed in any way to constitute a waiver or compromise of Plaintiffs' Database Claims, which are preserved in full.  Furthermore, nothing in this agreement shall in any way interfere with the Defendant's ability to claim this Court does not have jurisdiction to hear those claims or that the Plaintiffs lack standing to bring those claims.

5.    Plaintiffs' Database Claims are hereby stayed and held in abeyance pending service and filing by the Defendant Secretary of the first status report.  The Database Claims shall continue to be stayed and held in abeyance thereafter through the earlier of August 31, 2010 or the filing no earlier than January 15, 2010 with the Court of written notice from Plaintiffs that they wish to recommence proceedings on the Database Claims; absent an earlier written notice, Plaintiffs shall serve and file a report on August 31, 2010 concerning the status of and intentions concerning further prosecution of the Database Claims.  Defendant Secretary is obligated to continue to preserve any and all relevant documents and information within her possession concerning Plaintiffs' Database Claims during the pendency of the stay.  If the Plaintiffs determine they wish to prosecute any claim concerning the voter registration database, the Defendant Secretary has the right to immediately move to dismiss those claims.  Plaintiffs agree

3

that they will not initiate any discovery on any issue concerning the voter registration database, until this Court resolves the Defendant's motion to dismiss.

6.    The parties acknowledge that the Defendant Secretary's office is involved in a continuing effort, in cooperation with the Ohio Bureau of Motor Vehicles, to reexamine and refine the processes by which voter information contained in the statewide voter registration database is compared with information contained in the BMV driver's license database and the Social Security Administration database. To facilitate Plaintiffs' further assessment of the Database Claims and potential resolution of those claims, the Defendant Secretary's office shall serve and file status reports stating what steps, if any, the Defendant Secretary or others are taking to improve or change voter registration databases in Ohio. The first such status report shall be served and filed on or before December 31, 2009, with a subsequent report to be served and filed on June 30, 2010. The Plaintiffs agree that they will not present a claim for attorneys' fees for professional time accrued during the pendency of the stay of the Database Claims, provided, however, that Plaintiffs do not waive the right to seek fees for professional time that accrues during the pendency of the stay if (a) Plaintiffs exercise the option to recommence litigation on the Database Claims and (b) Plaintiffs are ultimately deemed entitled to recover attorneys' fees in connection with the Database Claims. Other than as provided under the Settlement Agreement, each Party shall bear its own costs, fees, and expenses with respect to the Settled Claims.

June _6_ 2009

_____
Honorable James G. Carr
United States District Court, Chief Judge

4

EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement" or "Agreement") is made and entered into as of the 15th day of June 2009 by and between League of Women Voters of Ohio, League of Women Voters Toledo-Lucas County (collectively, the "Leagues"), Darla Stenson, Charlene Dyson, Anthony White, Deborah Thomas, Leonard Jackson, Deborah Barberio, Mildred Casas, Sadie Rubin, Lena Boswell, Chardell Russell, Dorothy Cooley, and Lula Johnson-Ham ("Individual Plaintiffs") and Jeanne White ("Intervenor", and together with the Leagues, and the Individual Plaintiffs, the "Plaintiffs"), and the Secretary of State of Ohio, Jennifer Brunner, ("Defendant", and together with Plaintiffs, "the Parties").

I.     RECITALS

A.     WHEREAS, Plaintiffs brought suit against the Secretary of State and the Governor in the United States District Court for the Northern District of Ohio (the "Litigation") alleging, *inter alia,* that Ohio's voting system arbitrarily denies its citizens the right to vote or burdens the exercise of that right based on where they live; and is so unfair as to deny or severely burden Ohioans' fundamental right to vote; and

B.     WHEREAS, the Plaintiffs' claims include the following allegations, which the League asserts illustrate constitutional violations of the Equal Protection and Due Process Clauses of the United States Constitution:

- Voters in the 2004 presidential election were forced to wait from two to twelve hours to vote because of inadequate allocation of voting machines;

- Voting machines in the 2004 presidential election were not allocated proportionately to the voting population, causing more severe wait times in some counties than in others;

- Long wait times in the 2004 presidential election caused some voters to leave their polling places without voting in order to attend school, work, or to family responsibilities or because a physical disability prevented them from standing in line.

- Inadequate provision of voting machines in the 2004 presidential election caused 10,000 Columbus voters not to vote;

- Poll workers received prior to the 2004 presidential election inadequate training, causing them to provide incorrect instructions and leading to the discounting of votes.

- In some counties in the 2004 presidential election poll workers misdirected voters to the wrong polling place, forcing them to attempt to vote multiple times and delaying them by up to six hours.

- Provisional balloting was not utilized properly in the 2004 presidential election, causing 22% of provisional ballots cast to be discounted, with the percentage of ballots discounted reaching 39.5% in one county.

- In the 2004 presidential election voters with disabilities who required assistance were turned away.

- In the 2004 presidential election, registered voters were denied the right to vote because their names were missing from the rolls;

- In the 2004 presidential election, voters encountered non-functioning and malfunctioning voting equipment and

C.     WHEREAS, the Plaintiffs have alleged that the Secretary had failed prior to the 2004 presidential election to promulgate and maintain uniform rules, standards, procedures, and training of election personnel throughout Ohio contributing to these circumstances; and

D.     WHEREAS, the United States Court of Appeals for the Sixth Circuit held in *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 478 (6th Cir. 2008) that the League's allegations that Ohio utilizes "non-uniform rules, standards, and procedures" that result in "massive disenfranchisement and unreasonable dilution of the vote" state a constitutional claim of violations of the Equal Protection and Due Process Clauses of the United States Constitution, and

E.     WHEREAS, the Plaintiffs seek declaratory and injunctive relief to require Defendants to correct these alleged Constitutional violations, and

F.     WHEREAS, the Plaintiffs and Defendant met in mediation on February 23, 2009, and again on March 2, 2009 before mediator Judge David A. Katz; and

G.     WHEREAS, the Parties have resolved their differences in the manner set forth in this Settlement Agreement;

NOW, THEREFORE, in consideration of the foregoing and the mutual promises and representations set forth below, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties having resolved their differences in the manner set forth in this agreement in order to eliminate any potential unequal application of election administration and to promulgate uniform rules,

standards, procedures and training of election officials throughout the state, the Parties agree as follows:

## II.    AGREED UNDERTAKINGS OF THE SECRETARY OF STATE

A.    The Secretary of State agrees to administer elections in the State of Ohio in a constitutional manner. Nothing in this agreement, however, serves as an acknowledgement that any action of the State of Ohio in the conduct of any election has been unconstitutional.

B.    The Secretary of State agrees to perform the "Agreed Undertakings" set forth in Exhibit B during the term of this Settlement Agreement, which shall expire on January 11, 2015 (the "Term").  During the Term, the Secretary may seek to modify any obligation described in the Agreed Undertakings only upon first demonstrating to the court good cause for the proposed modification.

C.    Plaintiffs stipulate and agree that errors made by pollworkers shall not be deemed to constitute a breach of the Agreed Undertakings. The Plaintiffs further stipulate and agree that, so long as the Secretary of State performs the "Agreed Undertakings," she is acting within the bounds of Ohio and federal law in the conduct of elections with respect to the areas of election administration addressed by the "Agreed Undertakings" and that, during the Term, the Plaintiffs shall not bring any claim against the Secretary of State alleging that such election administration is unconstitutional.

D.    It is expressly agreed, and it is a material term to this Settlement Agreement, that this Settlement Agreement is entered into by the Secretary of State in her official capacity and is binding during the Term upon her successors.

### III.   ORDER ENFORCING SETTLEMENT AGREEMENT

A.      Within two business days of execution of this Settlement Agreement, Plaintiffs shall file with the Court an Order Enforcing Settlement Agreement (the "Order") in the form annexed as Exhibit A to this Settlement Agreement. All capitalized terms defined in the Order are to be given the same definitions in this Settlement Agreement.

B.      With the exception of the Database Claims, this case is dismissed with prejudice upon the expiration of the Term. The Database Claims shall be dismissed with prejudice upon the expiration of the Term unless, as of the expiration of the Term, Plaintiffs have recommenced prosecution of the Database claims and those claims remain unresolved.

C.      Nothing in this Settlement Agreement is or shall be deemed to be a waiver of any rights with respect to Plaintiffs' Database Claims, as that term is defined in the Order. Similarly, nothing in this Settlement Agreement is or shall be deemed to be a waiver of any rights or defenses against the Plaintiffs' Database Claims including lack of venue, lack of subject matter jurisdiction, or lack of standing of Plaintiffs to bring database claims.

### IV.   PAYMENT OF FEES

A.      Within thirty calendar days of execution of this Settlement Agreement, Defendant shall pay Plaintiffs four-hundred and fifty thousand U.S. dollars ($450,000) in complete settlement of Plaintiffs' claims for legal fees, costs, and expenses with respect to the Settled Claims. Payment of the $450,000 shall be made in a manner to be directed by Plaintiffs' counsel.

**V.    GOVERNING LAW, JURISDICTION, ACTIONS TO ENFORCE THE SETTLEMENT AGREEMENT**

A.    This Settlement Agreement, the rights and duties of the Parties hereunder, and any dispute arising out of or relating to this Agreement, will be governed by and construed, enforced and performed in accordance with the laws of the State of Ohio, without giving effect to principles of conflicts of laws that would require the application of laws of another jurisdiction.

B.    The Parties acknowledge and agree that the Hon. James G. Carr, Chief United States District Judge of the Northern District of Ohio, has and shall maintain continuing jurisdiction over this Settlement Agreement and that any claims arising out of or relating in any manner to this Settlement Agreement shall be properly brought only before Judge Carr in the United States District Court for the Northern District of Ohio. In the event that Judge Carr is unable, abstains from, or is otherwise unwilling to hear a claim, the parties consent to reassignment of this case to another Judge sitting in the *United States District* Western Division of the Northern District of Ohio.

**VI.    REPRESENTATIONS AND WARRANTIES**

The Plaintiffs and Defendant each separately represent and warrant that:

A.    they have been represented by counsel throughout the negotiation of this Settlement Agreement, that they have discussed the terms and conditions of this Settlement Agreement with their counsel, and that they understand the terms and conditions of this Settlement Agreement; and

B.    no promise or inducement has been offered for this Settlement Agreement other than as expressly set forth in this Agreement; and

6

C.      its signatory to this Settlement Agreement is legally competent to execute this Settlement Agreement, and has the legal authority to execute this Settlement Agreement.

D.      Upon execution of this agreement, the Plaintiffs will dismiss the Governor from this litigation with prejudice.

## VII.   OTHER PROVISIONS

A.      This Settlement Agreement, which includes its Exhibits, embodies Plaintiffs' and Defendant's complete and entire agreement with respect to the subject matter hereof.  No statements or agreements, oral or written, made before the signing of this Settlement Agreement shall vary or modify the written terms hereof in any way whatsoever.  No supplement, amendments, or modification of this Settlement Agreement shall be binding unless executed in writing by both parties hereto.

B.      All representations, warranties, agreements, covenants and obligations herein are material, shall be deemed to have been relied upon by other Parties, and shall survive the date of the execution of this Agreement

C.      Any notice to be provided in connection with this agreement shall be delivered in writing to:

for Plaintiffs the Leagues:

Jon Greenbaum
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue, Suite 400
Washington, DC 20005

for Plaintiff-Intervenor Jeanne White:

Matt Zimmerman
Electronic Frontier Foundation
454 Shotwell St.
San Francisco, CA 94110

7

for Defendants:

Attorney General Richard Cordray
c/o Assistant Attorney General Richard N. Coglianese
30 East Broad Street, 16th Floor
Columbus, Ohio 43215

D.  This Settlement Agreement may be executed in any number of

counterparts, each of which shall be deemed to be an original and all of

which taken together shall be deemed to be one and the same instrument.

E.  With the exception of documents that concern any claim about the

Statewide Voter Registration Database, any litigation hold the Court, the

Secretary of State and county boards of elections may have placed on

records as a result of this litigation is withdrawn and the Secretary and

Boards of Elections are free to handle those records pursuant to their

relevant records retention schedules and Chapter 149 of the Ohio Revised

Code.

[ BALANCE OF PAGE INTENTIONALLY BLANK ]

SIGNED and SEALED:

League of Women Voters of Ohio

By: *Meg G. Flack*

Name: *Meg G. Flack*

Title: *President*

Date: *June 14, 2009*

League of Women Voters Toledo-Lucas County

By: _____

Name: _____

Title: _____

Date: _____

Individual Plaintiffs

By: _____

Name: _____

Title:   Counsel to Darla Stenson, Charlene Dyson, Anthony White, Deborah Thomas, Leonard Jackson, Deborah Barberio, Mildred Casas, Sadie Rubin, Lena Boswell, Chardell Russell, Dorothy Cooley, and Lula Johnson-Ham

Date: _____

Intervenor Jeanne White

By: _____

Name: _____

Title:   Counsel to Jeanne White

Date: _____

SIGNED and SEALED:

League of Women Voters of Ohio

By: _____

Name: _____

Title: _____

Date: _____


League of Women Voters Toledo-Lucas County

By: *Peg Hull Smith*

Name: *PEG HULL SMITH*

Title: *BOARD OF DIRECTORS, PAST PRESIDENT*

Date: *JUNE 14, 2009*


Individual Plaintiffs

By: *J.R. Scullion*

Name: *Jennifer R. Scullion*

Title:  Counsel to Darla Stenson, Charlene Dyson, Anthony White, Deborah Thomas, Leonard Jackson, Deborah Barberio, Mildred Casas, Sadie Rubin, Lena Boswell, Chardell Russell, Dorothy Cooley, and Lula Johnson-Ham

Date: *6/15/09*

Intervenor Jeanne White

By: _____

Name: _____

Title:  Counsel to Jeanne White

Date: _____

9

SIGNED and SEALED:

League of Women Voters of Ohio

By: _____

Name: _____

Title: _____

Date: _____

League of Women Voters Toledo-Lucas County

By: _____

Name: _____

Title: _____

Date: _____

Individual Plaintiffs

By: _____

Name: _____

Title:  Counsel to Darla Stenson, Charlene Dyson, Anthony White, Deborah Thomas, Leonard Jackson, Deborah Barberio, Mildred Casas, Sadie Rubin, Lena Boswell, Chardell Russell, Dorothy Cooley, and Lula Johnson-Ham

Date: _____

Intervenor Jeanne White

By: _Jeanne White_

Date: _June 12, 2009_

9

Secretary of State of Ohio

By: _Jnf B_____

Name: _Jennifer Brunner_

Title: _Ohio Secretary of State_

Date: _June 15, 2009_


Approved By Ohio Attorney General Richard Cordray

By: _1_____

Name: _Richard N. Coglianese_

Title: _Principal Assistant Attorney General_

Date: _June 15, 2009_

10

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

------------------------------------------------

League of Women Voters of Ohio, et al.,   )
         Plaintiffs, )
             )
    and        )
             )
Jeanne White,         )
     Plaintiff-Intervenor )
             )
      v.      )
Jennifer Brunner, Secretary of State of Ohio )
and Ted Strickland, Governor of Ohio,  )
       Defendants )
             )

------------------------------------------------

Case No. 3:05-CV-7309

Hon. James G. Carr

## ORDER ENFORCING SETTLEMENT AGREEMENT

On July 28, 2005, Plaintiffs League of Women Voters of Ohio, League of Women Voters

of Toledo-Lucas County, and several individuals commenced this action pursuant to 42 U.S.C.

§ 1983 alleging that the administration and conduct of elections and voting in Ohio violates

rights to Equal Protection and Substantive and Procedural Due Process under the 14th

Amendment to the U.S. Constitution ("Constitutional Claims").  Plaintiffs' Constitutional Claims

concern, in part, the voter registration databases used in Ohio ("Database Claims").  Plaintiffs

further separately alleged a violation of the Help America Vote Act ("HAVA") due to the

alleged lack of a HAVA-compliant statewide voter registration database ("HAVA Claims").

Plaintiffs sought injunctive and declaratory relief against the Defendants in their official

capacities as, respectively, the Secretary of State and Governor of Ohio.  Defendants denied

Plaintiffs' allegations.  On November 7, 2005, the District Court granted Plaintiff-Intervenor

Jeanne White's motion to intervene to bring the same Constitutional and HAVA Claims, and

further alleging in support of these claims alleged problems relating to voting machines and other voting technology.  (All references hereafter to Plaintiffs includes Plaintiff-Intervenor White.)

The Court previously dismissed Plaintiffs' HAVA Claims.  The Sixth Circuit Court of Appeals subsequently dismissed the Procedural Due Process claims.  The District Court denied Defendants' motions to dismiss Plaintiffs' Equal Protection and Substantive Due Process claims and the Sixth Circuit affirmed that denial.

Plaintiffs and Defendants (the "Parties") have entered into a Settlement Agreement resolving the Constitutional Claims other than the Database Claims (the "Settled Claims").  A copy of the Settlement Agreement is annexed as Exhibit A to this Order.

Pursuant to the Settlement Agreement, the Parties agree to entry of this Order and agree that it may be entered without the Court making Findings of Fact and Conclusions of Law.

**IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.      This Court has jurisdiction over the Parties and causes of action in this consent decree, provided however that, to the extent that the Database Claims are litigated, the Defendants reserve the right to contest jurisdiction with respect to those claims and the Plaintiffs reserve the right to oppose any jurisdictional arguments raised by Defendants.

2.      This Order pertains solely to claims pending in *League of Women Voters of Ohio, et al. v. Brunner, et al.*, 3:05-CV-7309 (N.D. Ohio) (the "Litigation") and to the enforcement of the Settlement Agreement.  Other than as set forth below with respect to the Litigation and the Settlement Agreement, the Plaintiffs waive their right to bring any claims that they could have brought against these Defendants in this case that have arisen before the execution of this agreement except as has been specifically preserved in the settlement agreement.  The

2

Defendants, however, do not waive any defense they did or can raise in this Court against any surviving claim including lack of subject matter jurisdiction, improper venue, or lack of standing.

3. This Court shall have continuing jurisdiction to enforce this Order and the Settlement Agreement. Except with respect to the Database Claims to the extent that they are recommenced as set forth below, this Court's jurisdiction over this case, however, ends on January 11, 2015 at 12:01 a.m.

4. Except with respect to the Database Claims, the Settlement Agreement resolves the Constitutional Claims made by Plaintiffs in the Litigation. Nothing in this Order or in the Settlement Agreement shall be deemed in any way to constitute a waiver or compromise of Plaintiffs' Database Claims, which are preserved in full. Furthermore, nothing in this agreement shall in any way interfere with the Defendant's ability to claim this Court does not have jurisdiction to hear those claims or that the Plaintiffs lack standing to bring those claims.

5. Plaintiffs' Database Claims are hereby stayed and held in abeyance pending service and filing by the Defendant Secretary of the first status report. The Database Claims shall continue to be stayed and held in abeyance thereafter through the earlier of August 31, 2010 or the filing no earlier than January 15, 2010 with the Court of written notice from Plaintiffs that they wish to recommence proceedings on the Database Claims; absent an earlier written notice, Plaintiffs shall serve and file a report on August 31, 2010 concerning the status of and intentions concerning further prosecution of the Database Claims. Defendant Secretary is obligated to continue to preserve any and all relevant documents and information within her possession concerning Plaintiffs' Database Claims during the pendency of the stay. If the Plaintiffs determine they wish to prosecute any claim concerning the voter registration database, the Defendant Secretary has the right to immediately move to dismiss those claims. Plaintiffs agree

3

that they will not initiate any discovery on any issue concerning the voter registration database, until this Court resolves the Defendant's motion to dismiss.

6.      The parties acknowledge that the Defendant Secretary's office is involved in a continuing effort, in cooperation with the Ohio Bureau of Motor Vehicles, to reexamine and refine the processes by which voter information contained in the statewide voter registration database is compared with information contained in the BMV driver's license database and the Social Security Administration database.  To facilitate Plaintiffs' further assessment of the Database Claims and potential resolution of those claims, the Defendant Secretary's office shall serve and file status reports stating what steps, if any, the Defendant Secretary or others are taking to improve or change voter registration databases in Ohio.  The first such status report shall be served and filed on or before December 31, 2009, with a subsequent report to be served and filed on June 30, 2010.  The Plaintiffs agree that they will not present a claim for attorneys' fees for professional time accrued during the pendency of the stay of the Database Claims, provided, however, that Plaintiffs do not waive the right to seek fees for professional time that accrues during the pendency of the stay if (a) Plaintiffs exercise the option to recommence litigation on the Database Claims and (b) Plaintiffs are ultimately deemed entitled to recover attorneys' fees in connection with the Database Claims. Other than as provided under the Settlement Agreement, each Party shall bear its own costs, fees, and expenses with respect to the Settled Claims.

June ___, 2009

_____
Honorable James G. Carr
United States District Court, Chief Judge

4

EXHIBIT B

**Exhibit B**

**AGREED UNDERTAKINGS**

**These Agreed Undertakings are made pursuant to the Settlement Agreement entered into by the Secretary of State of Ohio ("Secretary") in connection with claims asserted against the Secretary in *League of Women Voters of Ohio, et al. v. Jennifer Brunner, et al.*, 3:05-CV-7309 (N.D. Ohio).  In accordance with that Settlement Agreement, these Agreed Undertakings are binding on the Secretary of State until they expire.  Under the terms of this agreement and settlement, these Agreed Undertakings expire at 12:01 a.m. on January 11, 2015.  During the term of this agreement the Secretary may seek to modify any obligation described in the Agreed Undertakings only upon first demonstrating to the court good cause for the proposed modification.**

**I.  Election Planning**

    A.  Paper Ballots

      1.  In order to ensure that Ohio voters are not denied equal protection of the law nor substantive due process by virtue of having to wait an unreasonably long period of time in order to exercise the franchise on election day, in statewide general elections in November of even-numbered years and in presidential primary elections, the Ohio Secretary of State then-currently in office ("Secretary") shall issue instructions to all county Boards of Elections ("BOEs") for the distribution of paper ballots in the event of long lines.

      2.  The Secretary will consider whether a statewide maximum wait time for voters can be established and will issue a public report on the issue no later than August 30, 2009.  Any determination about a maximum wait time, however, cannot be used as the basis for any claim that the lines at a precinct are unconstitutionally long or that a polling location must be kept open past its legal closing time.

    B.  Pre-Election Election Administration Plans

      1.  In order to promote efficient administration of elections on election day, thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process, for each statewide general election in November of even-numbered years the Secretary will require county BOEs to issue Election Administration Plans ("EAPs") 120 days before the election.  In addition, for each statewide presidential primary election the Secretary will require county BOEs to issue EAPs 60 days before the statewide presidential primary election.  EAPs shall contain at a minimum the components addressing the following issues:

        a.  Resource Allocation
        b.  Security

-1-

    c. Election Day Communication

    d. Materials

    e. Election Day Contingencies

2. The Election Day communications component should address the specifics of how the BOE will communicate with the Secretary of State, the media, the public, and pollworkers, and how each of these entities will communicate with the BOE. For pollworkers, the plan should include multiple alternative contact numbers at which pollworkers may contact BOE staff and procedures for communicating alerts and updates to pollworkers.

3. The Election Day contingencies component should address, at least, the contingencies of:

    a. Significant shortages or failures of election equipment and

    b. The absence or early departure of pollworkers

4. To the extent that prior Directives/Memoranda address these planning issues, the Secretary may rely on them in setting the requirements for the contents of the plans. Examples of prior Directives/Memoranda with relevant planning requirements include:

    a. Directive 2008-01:  requiring BOEs using direct recording electronic voting machines ("DRE") to determine the minimum number of optical scan ballots to be available in each precinct as back-up or alternative ballots and to provide secure ballot containers for voters to place their marked optical scan ballot.

    b. Directive 2008-02:  Requiring BOEs to provide information concerning estimated operating expenses and the type and quantity of equipment that the BOE plans to use in the election.

    c. Directive 2008-25:  Providing instructions to ensure security of polling places, voting equipment, supplies and/or ballots.

    d. Directive 2008-44:  Requiring verification and reporting concerning parking for disabled individuals.

    e. Directive 2008-56:  Requiring minimum security measures for BOE offices, including maintenance and storage of voting system equipment

    f. Directive 2008-57:  Providing minimum security, access, inventory control, storage and preservation requirements for ballots and election data media.

    g. Directive 2008-64:  Recommendations and guidelines regarding the acquisition and allocation of voting machinery.

    h. Directive 2008-68: Providing requirements to ensure security of voting equipment, memory cards and/or ballots used on Election Day and to provide secure transport guidelines.

    i. Directive 2008-65: Requiring separate lines and tables for DRE and optical scan balloting at precincts.

      j.  Directive 2008-73:  Providing minimum security requirements of vote tabulation servers

      k.  Directive 2008-74: Requiring boards of elections to submit security and risk mitigation plans.

      l.  Memorandum of August 8, 2008:  Requesting information concerning BOE in-person absentee voting sites.

      m.  Memorandum of October 7, 2008:  Requesting information regarding voter registration, absentee balloting, and in-person absentee voting.

5.  The Secretary's office shall review the EAPs to determine whether the BOEs are complying with  SOS election planning requirements and are adequately planning for upcoming elections.

6.  The Secretary will keep in place a means for BOEs to address questions to the Secretary and receive answers to those questions, such as the listserve currently in place.  The Secretary has sole discretion in determining what method is most effective to communicate with boards of elections.

C.  Post-Election Reporting

1.  In order  to effectively monitor the administration of elections thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process, the Secretary will issue directives to the  the BOEs from Cuyahoga, Franklin, Hamilton, Montgomery, Lucas, Stark, Mahoning, and Summit Counties instructing them to submit precinct-level data after every general election and every presidential primary election consistent with the reporting requirements of the federally-funded November 2008 Election Data Collection Grant Program.

2.  The Secretary will issue directives to the county BOEs instructing them to monitor and assess pollworker performance to determine whether individual pollworkers should be retrained or removed from duty on election day or, post-election day, whether the pollworker should be removed, retrained or reappointed. Such monitoring and assessment shall be based on, at a minimum, the following criteria:

      a.  Did the pollworkers self-report problems that the BOE knows occurred?

      b.  Did the pollworkers appropriately handle and process provisional ballots, including correctly providing provisional ballots?

      c.  Did pollworkers correctly complete the polling place reconciliation sheet and did the numbers reconcile?

      d.  Did the polls open and close on time?

3.  The Secretary will use best efforts to monitor the adequacy of each BOE's election planning and preparedness and enforce the requirements of this agreement, Ohio law, and the Secretary's directives and memoranda through administrative oversight and/or administrative support mechanisms.

4. After every general election and every Presidential primary election, the Secretary will issue directives to the BOEs instructing them to provide post-election data regarding, at least, voter registration, ballots cast, ballots counted, provisional ballots, absentee ballots, military and overseas ballots, and voting equipment problems and malfunctions.

5. After every general election and every presidential primary election, the Secretary will issue directives to the county BOEs instructing them to certify information regarding the number of absentee, overseas and provisional ballots requested, cast, and counted, such as is set forth in Directive 2007-29.

6. The Secretary will issue directives to the county BOEs instructing them to report on annual election expenses incurred, such as is set forth in Directive 2008-23, in order to provide important information for the Secretary to use in preparing the Secretary's annual report for the Governor, and to fully understand the financial implications for prospective election administration and policy considerations.

D. Multi-Precinct Polling Locations and Oversize Precincts

In order to promote the goal of ensuring that Ohio voters are provided more uniform and efficient voting experiences throughout the state, thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process the Secretary will provide recommended Best Practices to the BOEs on a continuing basis addressing:

1. the layout and operation of multi-precinct voting locations

2. corrective actions for precincts that are in breach of the statutory precinct maximum ("oversized precincts"), including annually monitoring and sending notices to counties with oversized precincts.

E. Website & Voter Education

1. The Secretary shall use best efforts to maintain a free, public, electronically-accessible means for voters to obtain basic information about voting in Ohio consistent with the information and functionality provided to voters for the November 2008 election.
2. The Secretary will use best efforts to continue to retain a full time "Program and Outreach Coordinator" (or equivalent) whose duties include developing voter education materials.

II. Pollworkers

A. Training

1. In order to promote efficient administration of elections on election day, thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of

the law nor substantive due process, the Secretary will maintain and regularly update existing pollworker materials, manuals and online training materials. Such training and materials will substantially conform in design to the pollworker training materials and manuals provided by the Secretary to BOEs to be used for the November 2008 election.

2. The Secretary will keep in place the requirement set forth in Directive 2008-77 that each BOE must use the pollworker training materials and instructions issued by the Secretary as part of pollworker training conducted by the BOEs, but shall clarify that county pollworker training materials shall not contain information inconsistent with the Secretary's instructions and materials.

3. The Secretary will use best efforts to promote mandatory annual pollworker training, either in person or online, with testing, before each general election, by 2010.

4. The Secretary's required pollworker training materials as described above in paragraph II(A)(2) shall continue to include express training on:

    a. the difference between, and proper processing of, provisional and regular paper ballots, including advising voters on whether they are in the correct precinct and

    b. voter identification requirements under Ohio and federal law.

B. Recruitment

1. In order to promote efficient administration of elections on election day, thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process, the Secretary will use best efforts to support and encourage pollworker recruitment, including:

    a. continuing the program, developed in cooperation with the Department of Education and Governor's Office, for outreach to graduating high school seniors, which includes voter registration information, absentee ballot information, and encouragement to become a pollworker;

    b. promoting partnerships with businesses to permit employees to work the polls;

    c. developing a recruitment plan targeted to colleges and universities;

    d. developing a pollworker recruitment web page on the Secretary's website including a description of the program, sample outreach materials and other information on how to participate.

2. The Secretary shall continue to require comprehensive training of all BOE Members, Directors and Deputy Directors by the Secretary's personnel no later

than six months after their appointment, with periodic retraining following the initial training.

3. The Secretary shall continue to develop a "train the trainer" program whereby county officials are trained in how to effectively train pollworkers.

## III. Provisional Ballots

In order to effectively monitor the administration of elections thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process the Secretary shall study, evaluate, and publicly report on the primary reasons why provisional ballots were not counted in the 2008 general election. The Secretary shall use best efforts to implement further measures to reduce the number of provisional ballots not counted. In conducting the study and evaluation, the Secretary shall consider data provided at the county level and, to the extent such information is available, at the precinct level.

## IV. Absentee Ballots

A. In order to effectively monitor the administration of elections thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process the Secretary shall issue a directive implementing for every general election and presidential primary the procedures set forth in the Secretary's Election Memorandum of October 7, 2008 requiring BOEs to report on absentee ballot absentee processing and the Secretary shall require that such reports be provided by the BOEs periodically in the period leading up to an election.

B. The Secretary shall study, evaluate, and publicly report on the differences (or "drop off") between the number of absentee applications submitted and the number of absentee ballots returned. The study and evaluation shall focus on counties with drop-off rates in excess of 15%.

## V. Voter Registration

In order to effectively monitor the administration of elections thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process the Secretary shall continue to direct field staff from the Secretary's office to, on at least an annual basis, personally observe at each BOE the processing of registration applications to confirm that applications are being processed in a timely, reliable, accurate, efficient, and professional manner in accordance with all applicable laws, including Directives issued by the Secretary.

## VI. Disability Access

The Secretary will continue:

1. The requirement that each BOE provide a signed certification prior to each election that each polling location comply with ORC § 3501.29(B)(1)(a), (b), (c) & (d);

2. To have a staff member whose duties include working with the BOEs to evaluate ADA compliance and working to increase handicap accessibility;

3. To have an advisory committee for voters with disabilities that will include persons with different disabilities and advocates;

4. To rigorously scrutinize requests for exemption from the requirements for §3501.29(B)(1);

5. To require that part of the job requirements for any "Field Representative" or equivalent is to provide assistance to BOEs in identifying non-compliant polling locations and assisting BOEs with ADA compliance efforts.

## VII.  Election Technology

In order to effectively monitor the administration of elections, thereby furthering the goal of ensuring that Ohio voters are not denied equal protection of the law nor substantive due process, the Secretary will continue:

1. To develop and adopt procedures requiring public post-election audits of all ballots cast in all general elections in even years and presidential primaries, such as those set forth in Directive 2008-39 and Directive 2008-113;

2. To develop and adopt procedures requiring that, in all general elections in even years and presidential primaries, counties utilizing DREs must offer paper ballots to voters in the event of machine problems or breakdowns, such as those set forth in Directive 2008-59 and 2008-107;

3. To develop and adopt statewide standards for Logic and Accuracy ("L&A") testing of tabulating machines, such as those set forth in Directive 2008-89 and Directive 2008-90;

4. To develop and adopt statewide standards regarding quality of paper and method of handling for the Voter Verified Paper Audit Trail (VVPAT), such as those primarily set forth in Directive 2008-57, as well as in Directives 2008-55, 2008-56, 2008-67, 2008-85, and 2008-87;

5. To develop and adopt statewide security procedures based on specified levels of risk for components of voting systems, such as those set forth in Directives 2008-25, 2008-56, 2008-57, and 2008-73;

-7-

6. To develop and adopt statewide standards regarding the physical security of voting equipment and components and requiring BOEs to keep an accounting of all voting machines and other permanent equipment distributed to voting precincts within the county and whether any voting equipment is missing or nonfunctioning and needs replacement, such as those set forth in Directives 2008-02, 2008-25, 2008-56, 2008-57, 2008-68, 2008-72, 2008-73, 2008-74, and in Advisory 2008-20.